**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BRADFORD FORBES MAYNE,  :
: Civil Action No.  06-3590 (DRD)
    Plaintiff,  :
:
    v.  : **OPINION**
:
UNDERSHERIFF DAVID DIMARCO,  :
et al.,  :
:
    Defendants.  :

**APPEARANCES**:

    BRADFORD FORBES MAYNE, Plaintiff pro se
    #3777816
    Mountainview Youth Correctional Facility
    31 Petticoat Lane
    Annandale, New Jersey 08801

**DEBEVOISE**, District Judge

Plaintiff Bradford Forbes Mayne ("Mayne"), currently confined at the Mountainview Youth Correctional Facility in Annandale, New Jersey, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will (1) grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) (1998) and (2) order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether it

should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint should proceed in part.

## I.   BACKGROUND

It appears that Mayne is a convicted state prisoner currently confined at the Mountainview Youth Correctional Facility.  The Complaint asserts alleged civil rights violations while plaintiff was confined at the Keogh Dwyer Correctional Facility ("KDCF").  Thus, it would appear that Mayne may have been a pretrial detainee at the time of the alleged violations.  He brings this civil rights action against defendants Undersheriff David Dimarco of the Sussex County Sheriff's Department, acting warden at KDCF; and Head Nurse Charlotte Tyler, also employed at KDCF. (Complaint, Caption, ¶ 4b, c).  The following factual allegations are taken from the Complaint and are accepted as true for the purposes of this review.

On August 21, 2005, Mayne was initially confined at KDCF.  On or about December 18, 2005, while in solitary confinement, Mayne noticed a rash on his chest.  He made a verbal request to defendant Tyler to be placed on a "sick call" list for examination by a doctor.  Tyler did not act on his request.

On January 1, 2006, Mayne's rash had become worse. He had large lumps on his chest, which had spread to his back. Some of the lumps had discharge. Mayne again asked Nurse Tyler to be examined by a doctor. Instead, he received antibiotics. By January 22, 2006, his condition continued to get worse and Mayne began placing written requests to Tyler and others at KDCF for treatment by a doctor. Mayne wrote that the antibiotics were not helping him. From January to March 9, 2006, Mayne submitted more medical requests, but received no replies.

On March 9, 2006, Mayne filed a grievance with defendant DiMarco. DiMarco replied that Mayne was on a list to be examined by a doctor. Mayne wrote another grievance to DiMarco on March 11, 2006 because he still had not been seen by a doctor. He received no reply to the March 11, 2006 grievance.

At this point, plaintiff began receiving threats from other inmates concerned for their health. Mayne reported these threats to a correctional officer, but nothing was done to remedy the situation. On April 19, 2006, Mayne sent a letter to DiMarco, which was signed by many inmates, complaining about the lack of inmate request forms for grievances. Plaintiff received no medical treatment for his condition while at KDCF, until he was transferred to the Central Reception and Assignment Facility in Trenton, New Jersey.

Mayne states that he has scars on his chest and back and that he suffers from nightmares and a diagnosed anxiety disorder. He continues to suffer pain in his chest and back from his skin infection. Mayne complains that both Tyler and DiMarco deliberately ignored his numerous medical complaints and requests to see a doctor. Sick calls were provided only once a week, and the screening process to determine whether plaintiff needed to be examined by a doctor was inadequate. Mayne alleges that he had to beg guards and other staff at KDCF for medical attention.

Mayne also complains that KDCF had an inadequate law library and that there were no paralegals or qualified staff to help with legal research. Mayne began using the law library in January 2006 to prepare his civil complaint. On March 30, 2006, he wrote a grievance to DiMarco, complaining that many of the law volumes were missing or destroyed. Mayne was referred to the Prisoner Self Help Clinic, but they did not respond to his phone calls or letter requests. Plaintiff filed grievances on April 11, 2006 and April 19, 2006. He claims that he was blocked from access to legal materials and that this prohibited action caused him to file his complaint months later than it could have been filed.

Mayne seeks to recover compensatory and punitive damages in excess of $75,000.00. He also seeks injunctive relief compelling defendants to provide an independent monitor to review medical

grievances.  Because plaintiff is no longer confined at KDCF, his request for injunctive relief will be denied as moot.

## II. STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA") requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996).  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

5

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981). However, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim, but lacked sufficient detail to function as a guide to discovery, was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir.

6

2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.   SECTION 1983 ACTIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights guaranteed under the United States Constitution.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

In addition, local government units and supervisors generally are not liable under § 1983 solely on a theory of respondeat superior.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n. 8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal

liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

Further, a § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690 n.55. "[I]n an official-capacity action, . . . a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." Kentucky v. Graham, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

Here, Mayne alleges facts sufficient to show that defendants were personally involved in the actions at issue; therefore, the Complaint is not based solely on a theory of respondeat superior.

IV.   ANALYSIS

Construing the Complaint most liberally for the pro se plaintiff, the Court finds that Mayne alleges a denial of medical care claim and a denial of access to the courts claim.

A.   Denial of Medical Care

Mayne alleges that he was denied medical treatment in violation of his constitutional rights.  It appears that plaintiff was a pretrial detainee at the time of the alleged incidents.  Thus, this denial of medical care claim will be considered under the due process clause of the Fourteenth Amendment.  See City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 243-45 (1983) (holding that the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, controls the issue of whether prison officials must provide medical care to those confined in jail awaiting trial); Hubbard v. Taylor, 399 F.3d 150, 158 (3d Cir. 2005); Fuentes v. Wagner, 206 F.3d 335, 341 n.9 (3d Cir.), cert. denied, 531 U.S. 821 (2000); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 n.31 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).  However, the Third Circuit has held that the "deliberate indifference" standard employed in Eighth Amendment

9

cases also may apply to pretrial detainees under the Fourteenth Amendment.  See Natale v. Camden County Correctional Facility, 318 F.3d 575, 581-82 (3d Cir. 2003)("In previous cases, we have found no reason to apply a different standard than that set forth in Estelle . . . We therefore evaluate Natale's Fourteenth Amendment claim for inadequate medical care under the standard used to evaluate similar claims under the Eighth Amendment."); Simmons v. City of Philadelphia, 947 F.2d 1042, 1067 (3d Cir. 1991), cert. denied, 503 U.S. 985 (1992); Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990); Taylor v. Plousis, 101 F. Supp.2d 255, 262 n.3 (D.N.J. 2000).  See also Hubbard, 399 F.3d at 166 n.22.  Accordingly, since the Fourteenth Amendment in this context incorporates the protections of the Eighth Amendment, the Court will apply the deliberate indifference standard of the Eighth Amendment in analyzing plaintiff's denial of medical care claim.  See Simmons, 947 F.2d at 1067 (the rights of a detainee are at least as great as those of a convicted prisoner.)

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-04 (1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege:  (1) a serious

medical need; and (2) behavior on the part of the prison officials that constitutes deliberate indifference to that need. Estelle, 429 U.S. at 106; Natale, 318 F.3d at 582.

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992). The Third Circuit has defined a serious medical need as:  (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which the "the denial of treatment would result in unnecessary and wanton infliction of loss of pain" or "a life-long handicap or permanent loss." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003) (internal quotations and citations omitted); see also Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need.  See Natale, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety.)

"Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. Andrews v. Camden County, 95 F. Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

Thus, the Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended

treatment.  See Rouse, 182 F.3d at 197.  The court has also held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment.  Atkinson, 316 F.3d at 266.  See also Monmouth County Correctional Institutional Inmates, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen . . . prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment"); Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993); White v. Napoleon, 897 F.2d 103 (3d Cir. 1990).

Here, Mayne alleges that defendants were deliberately indifferent to his repeated requests for medical attention for a noticeable and painful skin infection and rash.  The rash continued to get worse and other inmates began to threaten Mayne for fear of their health.  Nevertheless, his many requests went unanswered and he was never seen by a doctor at KDCF.  Mayne does admit that he received antibiotics, but the antibiotics did not help.  Defendants were made aware of plaintiff's condition, but did nothing to help him.

These facts, as alleged, if true, may support a claim that defendants had deliberately and repeatedly ignored plaintiff's need for medical attention for a skin infection that may have posed a serious health risk to plaintiff and others.  The

question as to whether Mayne's condition constituted a serious medical need is a factual issue that is not appropriately decided on a <u>sua sponte</u> summary screening.  Therefore, the Court will allow the denial of medical care claim to proceed at this time.

B.  <u>Denial of Access to the Court System</u>

Finally, Mayne asserts that there are no paralegals to assist inmates with legal research at KDCF and that the law library is inadequate.  Consequently, plaintiff complains that he was restricted in filing this action with the Court sooner than he did.

The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances.  <u>Bill Johnson's Restaurants, Inc. v. NLRB</u>, 461 U.S. 731, 741 (1983).  In addition, the constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights.  <u>Procunier v. Martinez</u>, 416 U.S. 396, 419 (1974), <u>overruled on other grounds</u>, <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 413-14 (1989).  <u>See also</u> <u>Peterkin v. Jeffes</u>, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988) (chronicling various constitutional sources of the right of access to the courts).

In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  The right of access to the courts is not, however, unlimited.  "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasis in original).  Similarly, a pretrial detainee has a right of access to the courts with respect to legal assistance and participation in one's own defense against pending criminal charges.  See, e.g., May v. Sheahan, 226 F.3d 876, 883-84 (7th Cir. 2000); Caldwell v. Hall, 2000 WL 343229 (E.D. Pa. March 31, 2000).  But see United States v. Byrd, 208 F.3d 592, 593 (7th Cir. 2000) (pretrial detainee who rejects an offer of court-appointed counsel in satisfaction of the Sixth Amendment right to counsel has no alternative right to access to a law library); Wilson v. Blankenship, 163 F.3d 1284, 1290-91 (11th

Cir. 1998) (same); United States v. Walker, 129 F.3d 1266, 1997 WL 720385, **4 (6th Cir. 1997) (same).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense.  See Lewis, 518 U.S. at 348-51, 354-55 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997). "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." Lewis, 518 U.S. at 351.

Here, Mayne fails to allege any actual injury as a result of the alleged non-existence of paralegals and the inadequate law library and facilities at KDCF.  Plaintiff was able to file this Complaint in a timely manner, despite his allegations that his efforts were encumbered by the lack of legal materials. Therefore, plaintiff does not show actual injury with respect to the general claim that he was denied access to the courts by an inadequate law library and the alleged failure of the KDCF officials to provide paralegals or legal assistants in the jail

law library for the inmates' research needs.  This claim will be dismissed without prejudice.

### V.   CONCLUSION

For the reasons set forth above, plaintiff's denial of access to the courts claim will be dismissed without prejudice for failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  The remaining denial of medical care claim will be allowed to proceed at this time.  An appropriate order follows.

                                         **/s/ Dickinson R. Debevoise**
                                         DICKINSON R. DEBEVOISE
                                         United States District Judge
Dated: August 11, 2006