NOT FOR PUBLICATION                                                                CLOSED

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

_____
Bradford Forbes Mayne,              :
                                    :
    Plaintiff,                     :
                                    :    **Civil Action No. 06-3590 (DRD)**
v.                                  :
                                    :    **OPINION**
Undersheriff David DiMarco and      :
Head Nurse Charlotte Tyler,         :
                                    :
    Defendants.                    :
_____ :

Appearances by:

Bradford Forbes Mayne
117 Wagon Wheel Road
Sparta, New Jersey 07871
    *Pro Se* Plaintiff

James M. McCreedy, Esq.
Wiley, Malehorn and Sirota
250 Madison Avenue
Morristown, New Jersey 07960
    Attorney for Defendants Undersheriff David DiMarco and Head Nurse Charlotte Tyler

**DEBEVOISE, U.S.S.D.J**

    Defendants, Undersheriff David DiMarco, acting warden of the Keogh Dwyer Correctional Facility, and Charlotte Tyler, employed as Head Nurse at the Keogh Dwyer Correctional Facility, (referred to individually by last name and collectively referred to as "Defendants"), have brought this Motion, pursuant to Fed. R. Civ. P. 56 and L.Civ.R. 56.1, for summary judgment to dismiss the §

1983 claims of *Pro Se* Plaintiff, Bradford Forbes Mayne ("Mayne").  Mayne alleges that the medical care provided to him by Defendants was inadequate and in violation of his rights under the Eighth Amendment to the United States Constitution.

Defendants assert that Mayne failed to state a constitutional violation because his allegations merely represent disagreement with the medical treatment rendered to him, and, because there is no genuine issue of material fact, they are entitled to summary judgment as a matter of law. Additionally, they assert the affirmative defenses of Mayne's failure to exhaust, as required, his administrative remedies and the qualified immunity of the Defendants.

For the reasons cited below, Defendants' motion for summary judgment will be granted.

## BACKGROUND

Mayne is no longer incarcerated, although, at the time he filed the complaint, he was confined at the Mountainview Youth Correctional Facility, and his complaint alleges civil rights violations, under 42 U.S.C. § 1983, which occurred while he was a pre-trial detainee at the Keogh Dwyer Correctional Facility ("KDCF").

Mayne entered KDCF on August 21, 2005.  He alleges in his Complaint that, on December 18, 2005, while he was being held in solitary confinement, he complained to Tyler about a rash on his chest and he requested that she arrange for him to be seen by a doctor.  He says that Tyler did not act on his request, and his rash worsened, eventually developing into lumps on his chest and back, some of which had a discharge.  Mayne claims that he again requested that Tyler arrange for him to be seen by a doctor, but she provided him only with antibiotics.

Because his condition continued to worsen, Mayne alleges that he submitted written requests to be seen by a doctor to Tyler, and others, between January 22, 2006 and March 9, 2006, but his

written requests also went unaddressed. He states that on March 9, 2006, he resorted to filing a grievance, to which DiMarco replied that Mayne was "scheduled [March 10, 2006] on the list to be examined by a doctor." Mayne says that he was never seen by a doctor. When, by March 11, 2006, Mayne still was not seen by a doctor, he states that he again filed a grievance and, again, received no reply. Mayne claims that, because of his medical condition, the other prisoners began to threaten him, and, although he reported the threats to a corrections officer, nothing was done. Mayne asserts that he, in fact, received no treatment until he was transferred to the Central Reception and Assignment Facility in Trenton, New Jersey. As a result of inadequate medical treatment, he now has scars and suffers from pain, nightmares, and anxiety.

Mayne argues that, not only did the Defendants deliberately ignore his medical complaints and his requests to be seen by a doctor, the facility's medical screening process was inadequate and provided for sick calls only one time per week.

Mayne's request for injunctive relief to compel Defendants to provide an independent monitor to review medical grievances was denied by the Court as moot on August 11, 2006, because Mayne was no longer incarcerated at KDCF. His requests for punitive and compensatory damages, however, were permitted to proceed.

## DISCUSSION

Although Mayne did not formally file opposition with the Clerk's Office, he was permitted to present his opposition at oral argument. In support of his argument, he presented photographs of his back and chest which show a rash on his skin and copies of Inmate Request Forms dated January 22, 2006, March 4, 2006 and March 9, 2006 that he said he submitted to corrections officers but were not answered.

**Summary Judgment Standard**

A court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In reviewing motions for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. See InterVest, Inc. v. Bloomberg, L.P., 340 F.3d 144, 159-160 (3d Cir. 2003). The moving party has the burden to show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1362-1363 (3d Cir. 1992). An issue is "genuine" if a reasonable jury could find in the non-moving party's favor on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986). The movant need not disprove the opponent's claim, but must still demonstrate the absence of any genuine issue of material fact. Big Apple BMW, 974 F.2d at 1362-1363. Once the moving party meets its burden, the non-moving party must adduce evidence showing that a genuine issue exists. Id. To successfully defend against a motion for summary judgment, a plaintiff cannot merely rely on the unsupported allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in his favor. Anderson, 477 U.S. at 252. If the non-moving party fails to make a sufficient showing establishing an element of his claim that is essential to his case, and on which he will bear the burden of proof at trial, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

**Mayne Has Failed to Exhaust His Administrative Remedies**

Defendants cite the affirmative defense that Mayne is procedurally barred from pursuing his

claim in federal court because he failed to exhaust the administrative remedies available to him through KDCF's "Inmate Grievance Procedure" before filing his § 1983 claim.

The PLRA, 42 U.S.C. § 1997e(a), states in relevant part that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See 42 U.S.C. § 1997e(a).

In Woodford v. Ngo, 126 S.Ct. 2378, 2387 (2006), the Supreme Court held that a plaintiff is required to exhaust the prison administrative remedy procedures before filing his action in federal court, and use of the procedures are mandatory under the Prison Litigation Reform Act ("PLRA"), even if the relief requested is beyond the hearing officer's ability to grant. The exhaustion requirement "applies to all federal claims brought by any inmate," including claims about specific incidents or ongoing conditions. Porter v. Nussle, 534 U.S. 516, 520-532 (2002). The plaintiff must pursue to completion the available administrative remedies, even if they do "not meet federal standards," or could not result in the relief requested. Nussle, 534 U.S. at 524. Grievance procedures set forth in an inmate handbook constitute such a remedy, even if they are not formally adopted by any state administrative agency. Concepcion v. Morton, 306 F.3d 1347, 1348-1349 (3d Cir . 2002). The prisoner must "carry the grievance through any available appeals process" before the remedies will be deemed exhausted. Camino v. Scott, 2006 WL 1644707, *4 (D.N.J. June 7, 2006) (citation omitted). Failure to exhaust remedies mandates dismissal of the inmate's claim. See, *e.g.*, Booth v. Churner, 532 U.S. 731.

Mayne's action must be dismissed because he failed to pursue his grievance concerning his medical care under the prison procedure that was available to him.

KDCF has a procedure that allows an inmate to file a grievance "for an alleged violation of Civil, Constitutional or statutory rights or of policy; an alleged criminal or prohibited act by a staff member; to resolve a condition existing within the Jail that creates unsafe or unsanitary living conditions; or to appeal a decision of the Disciplinary Committee." (See Inmate Grievance Procedure 1.07). The procedure provides for the filing of three different types of grievances. An "informal" grievance may be presented by an inmate to any staff member at any time and, an unresolved informal grievance may be pursued as a "standard" grievance. (Id. at 1.10-1.11). A "standard" grievance may be presented by an inmate by completing the Inmate Request Form at any time within fifteen days after a grievable event has occurred. (Id. at 1.12-1.15). If a staff member receiving the inmate's grievance determines that the grievance concerns an immediate threat to the welfare or safety of the inmate, however, the inmate's grievance may be processed as an "emergency" grievance, which is channeled through the chain of command without delay to the level where action can be taken. (Id. at 1.16-1.17).

Grievances that are unresolved to the inmate's satisfaction through the use of the "standard" or "emergency" procedure may be presented by the inmate within seven days to a Grievance Committee, which convenes a hearing to review the facts and any additional information presented by the inmate. The Grievance Committee will make a determination on the inmate's grievance within fifteen days of the hearing. (Id. at 1.19-1.22)

Inmates who are dissatisfied with the determination of the Grievance Committee next may appeal within five working days of receipt of the Committee's determination to the Jail Administrator who has ten working days to reply in writing to the grievance. The decision of the Jail Administrator is final. (Id. at 1.23-1.24).

Defendants assert that while Mayne was in solitary confinement, he raised an informal grievance with Tyler on or about December 18, 2005 when he complained to her about a rash. According Tyler's affidavit, she examined Mayne's rash and reported it to the jail physician, Dr. Ghanbari, who prescribed antibiotic treatment on January 11, 2006, and that she, and other nurses, administered the antibiotics to Mayne in accordance with the doctor's order. Tyler stated in her affidavit that Mayne was examined by the jail physician on January 23, 2006 and that Mayne was continued on antibiotic treatment.

Defendants also assert that Mayne's only grievance concerning his medical condition was filed on March 9, 2006 Inmate Request Form with DiMarco who, on March 10, 2006, issued a response to Mayne, advising him that he was scheduled for examination by Dr. Ghanbari that same day, and that the Doctor's Progress Note records that he was "seen by" the doctor on March 10. Defendants assert that, following her examination of Mayne, Dr. Ghanbari continued Mayne on antibiotic treatment.

Defendants submit copies of thirty-eight grievances that Mayne filed between January 5, 2006 and April 24, 2006 while he was at KDCF, including the one filed March 9, 2006 concerning his medical condition. Defendants argue that, if Mayne was dissatisfied with the result of his treatment or medical attention, he was required to exhaust his administrative remedies, available to him through the internal inmate grievance procedure, by appealing to the Grievance Committee and then to the Jail Administrator before filing his Complaint in federal court. Defendants argue, however, that there is no evidence, other than Mayne's unsubstantiated allegations, that Mayne pursued his medical concerns beyond March 10, 2006. Thus, Defendants argue that Mayne failed to exhaust his administrative remedies and, pursuant to the PLRA, Mayne's action must be dismissed

with prejudice.

  Mayne asserts in his Complaint that he was not seen by a doctor on January 22, 2006 and his Inmate Request Form dated the same date, which he submitted at oral argument, went unanswered. He alleges that the two other Inmate Request Forms concerning his medical condition, dated March 4 and March 9, 2006, which he also submitted at oral argument, went unanswered. Further, his Complaint alleges that he received no medical treatment until he was transferred to the Central Reception and Assignment Facility in Trenton, N.J. At oral argument, he clarified this as he received no effective treatment of his rash until he was transferred to Central Reception.

  Defendants have presented evidence that Mayne received medical treatment for his skin rash beginning in January, 2006 following his informal complaint to Tyler. There is no medical record that corroborates Tyler's statement in her affidavit that Mayne was actually examined by the doctor in January. Mayne was continuously treated with antibiotics, but it appears that he was not examined by the prison physician until March 10, 2006, following his filing of an Inmate Request Form grievance with DiMarco on March 9, 2006. Following his examination, the physician's diagnosis and treatment of Mayne's condition remained unchanged according to the records.

  Defendants grievance records are incomplete in that they do not reflect the Inmate Request Forms filed by Mayne concerning his medical condition on January 22, 2006 and March 4, 2006, which he submitted at oral argument. The record submitted, however, makes clear that Mayne filed a number of grievances after March 10, 2006, but none of them concerned his medical issue or appealed his medical treatment. At oral argument, Mayne did not present any evidence that he, in fact, filed other medical grievances or appealed his treatment in accordance with the Inmate Grievance Procedure. Thus, Mayne has presented only the bald assertions in his Complaint that he

pursued his medical grievance any further than the Inmate Request Form that he filed on March 9, 2006.

Under the Inmate Grievance Procedure, if he was still dissatisfied with the medical diagnosis or treatment that he was receiving, he was required to appeal to the Grievance Committee and then to the Jail Administrator before filing with the court.  There is no evidence that he did so.  Thus, Mayne's failure to exhaust the administrative remedies available to him before filing with the court requires dismissal of his action.

## CONCLUSION

For the reasons set forth above, Defendants Motion for Summary Judgment will be granted, and Mayne's civil rights action for inadequate medical care will be dismissed with prejudice.  An appropriate order follows.

/s/ Dickinson R. Debevoise
Dickinson R. Debevoise, U.S.S.D.J.

Dated: July 17, 2007